ALABAMA & VICKSBURG RAILWAY CO. *v.* JAMES SUMMERS.

1. RAILROADS. *Negligence. Flying-switch.*

It is negligence *per se* for a railroad company to make a flying-switch across the streets of a town along which persons are constantly accustomed to walk. See *Fulmer* v. *I. C. R. R. Co.*, *ante*, 355.

2. SAME. *Contributory negligence. Case in judgment.*

A woman, carrying a large bundle of clothing on her head, was walking south along an unused dummy track in Vicksburg, whereon many persons were accustomed to walk. Parallel with this on one side was a public street, and on the other defendant's railroad. A locomotive and five cars met and passed her, going north on the main line. They then stopped and ran back, two cars being diverted by a "running or flying-switch" to a side-track, which curved and crossed the dummy line and adjacent street south of where she then was. As the train repassed her, the engineer and others made great efforts to warn her of the danger of the detached cars rapidly approaching behind her, but, because of the bundle on her head, these efforts were unavailing, and as she reached the crossing the cars struck and injured her. *Held*, proper to instruct that, if these facts existed, defendant was guilty of negligence, and to submit to the jury whether, under the circumstances, the woman acted with reasonable prudence.

3. CONTRIBUTORY NEGLIGENCE. *Question for jury.*

On these facts, the question of contributory negligence was properly submitted to the jury. The court cannot say as matter of law that it was contributory negligence on the part of the woman not to foresee and guard against the unlawful act of the defendant in making the flying-switch and starting the cars on their dangerous course behind her.

FROM the circuit court of Warren county.

HON. J. D. GILLAND, Judge, did not preside in this case. WARREN COWAN, ESQ., a member of the bar, presided by agreement.

On the 22d day of January, 1890, Nancy Summers, a colored woman, was injured on defendant's railroad track, in the city of Vicksburg, from the effects of which she died. This suit was brought against the railroad company by her husband, James Summers, for damages on account of the killing.

On the trial, among other things, the court instructed the jury for the plaintiff as follows:—

"2. The court instructs the jury that the fact that defendant's employés made the 'running-switch,' or 'drop' or 'flying-switch,' over the Water street public crossing, and where the dummy track crossed the defendant's track, as described in the pleadings and evidence in this case, is negligence in itself, and if they believe from the evidence that Nancy Summers was run over and killed in consequence of making said flying-switch, then they will find for the plaintiff, unless they further believe from the evidence that she was also guilty of negligence which proximately contributed to the said injury."

"3. The court instructs the jury that if they believe from the evidence, the noise of the engine, as it ran south past the switch, where said 'flying-switch' was made, prevented the said Nancy Summers from hearing the approach of the freight cars to said dummy line crossing where she was killed; and if they believe from the evidence that the running of said engine down said main line of track, attracted her attention and led her to believe that all of said cars were still attached thereto, or that they had been left behind on said main track, in consequence of which she was run over and killed by said detached cars, then they will consider these facts together with the fact that there was no other engine and cars on any of defendant's tracks near to said crossing, and they will also consider all the other facts and circumstances in the case; and after they have so considered all such facts and circumstances, if they believe from the evidence that she exercised the same care and caution to prevent the injury, that a man of ordinary care and prudence would have exercised under the same circumstances, then she was not guilty of contributory negligence, and the jury will find for the plaintiff."

"4. The jury in determining whether or not the deceased Nancy Summers was guilty of such contributory negligence as would bar a recovery under the laws as laid down in the case, must take into consideration all the facts and circumstances surrounding her just before and at the time she was struck by the defendant's cars; and if, after considering all these facts and circumstances so proven,

the jury cannot say from the evidence that she was guilty of such contributory negligence, they must find for the plaintiff."

"7. The court instructs the jury that the burden of proof is on the defendant to show the contributory negligence of Nancy Summers, relied on by it, to defeat plaintiff's action herein, and unless it has proved such contributory negligence to the satisfaction of the jury, they will find for the plaintiff, unless such contributory negligence is shown by the evidence for the plaintiff."

Verdict and judgment in favor of plaintiff for $1250.

Motion for new trial overruled, and defendant appealed.

The facts deemed necessary to a proper understanding of the case, as found by the court from the record, are stated in the opinion.

*Nugent & McWillie,* for appellant.

It is alleged that it was negligence *per se* to make a running switch in a populous city. Conceding this to have been such, this was not a public street, and it was not negligence to make such a switch at that point. 1 Rorer on Railroads, 491. Between the management of the engine and the injury there was no causal connection. *Bell* v. *Railroad Co.,* 4 Am. & Eng. Ry. Cas. 580; *O'Donnell* v. *Railroad Co.,* 6 R. I. 211; *Railroad Co.* v. *Hart,* 61 Miss. 468.

Deceased was not injured at a street crossing. If she had been approaching the crossing on Water street, *non constat* but that the cars would have been stopped. The subsequent negligence in making a running-switch across the street cannot render appellant liable for injury to a trespasser on its right of way at another place. *Bell* v. *Railroad Co.* and *O'Donnell* v. *Railroad Co., supra.*

2. But, conceding the defendant's negligence, none of its omissions of duty alleged relieved the difficulty of the gross contributory negligence of the deceased.

The alleged failure to observe the statutory regulations as to crossings would not have that effect if established. *Railroad Co.* v. *McGowan,* 62 Miss. 682; *Railroad Co.* v. *Stroud,* 64 Ib. 784; *Strong* v. *Railroad Co.* (Miss.), 3 So. Rep. 465 and cases cited in

note; 32 Barb. 159; 18 N. Y. 422; 39 Ib. 61; 71 Mo. 476; 9 Bradwell (Ill.), 89; 52 Cal. 602; 10 Kans. 426.

Nor does the making of a running-switch, even where held to be negligence *per se*, relieve the injured person from contributory negligence.    1 Rorer on Railroads, 491 and cases cited; *Hinkley* v. *Railroad Co.*, 120 Mass. 257.

There is nothing in the case of *Fulmer* v. *Railroad Co.*, *ante*, 355, in conflict with this view.    In that case the running-switch had already been made over the public crossing when deceased was injured by cars running down grade fifteen or twenty miles an hour. He endeavored to get out of the way when he saw the car approaching.    There the evidence of contributory negligence was weak and that of negligence on the part of the railroad employés very strong. Here the contributory negligence was overwhelming.    Deceased deliberately went into a place where the cars were being constantly run, with a burden on her head which incapacitated her to hear anything or to see anything that was not directly in front.    Every imaginable warning was given, and every effort made to prevent her going on the crossing when the danger was discovered.    It was a case of the grossest contributory negligence, and the jury should have been instructed to find for defendant.    By the instructions the jury was told no matter what the deceased did, if they thought she was reasonably prudent, they must find for plaintiff. ·This was manifestly erroneous.    2 Rorer on Railroads, 1030, 1038.

Even the anomalous Alabama case, referred to by opposite counsel, does not support the contention that the making of every running-switch is evidence of such intentional wrong as precludes the defense of contributory negligence; but the facts of this case easily distinguish it from that.

We refer to the following cases where a recovery has been denied on the ground of contributory negligence much less in degree than that shown by the facts in this case: *Austin* v. *Railroad Co.*, 91 Ill. 35; 71 Mo. 476; 8 Ohio, 570; 8 Jones L. (N. C.) 340; 10 Allen, 532; 55 Pa. 376; 25 Barb. 600; *Heffinger* v. *Railroad Co.*,

45 N. W. Rep. 1131 ; *Railroad Co.* v. *Watkins,* 12 Am. & Eng. R. R. Cas. 89 ; 2 Rorer on Railroads, 1030 and cases cited.

There was no reason why the railroad employés should have anticipated the foolhardy act of the deceased in this case. Their urgent warnings passed unheeded because she had incapacitated herself from hearing them. *Railroad Co.* v. *Cooper,* 8 So. Rep. 747.

*Birchett & Shelton,* on the same side.

*Anderson & Russell,* for appellee,

Filed a lengthy brief, and as to the questions decided by the court, made the following points :—

1. The defendant was guilty of negligence. It is negligence *per se* to make a running or flying-switch in a populous city. Beach on Con. Neg. 223 ; Lawson's Rights & Rem., vol. 3, § 1187 ; *Brown* v. *Railroad Co.,* 32 N. Y. 597 ; *Shelby* v. *Railway Co.* (Ky.), 3 S. W. Rep. 157 ; *Fulmer* v. *Railroad Co., ante,* 355 ; *Railroad Co.* v. *Voelker,* 22 N. E. Rep. 20.

2. It was for the jury to say from the evidence whether the deceased, under all the circumstances, exercised that care and circumspection to avoid injury which ordinary prudence would require, having in view all the known dangers of the situation.

The cases of *Stroud* v. *Railroad Co.* and *Strong* v. *Railroad Co.,* cited by opposite counsel, are not applicable.

The deceased had a right to assume that the servants of the defendants would obey the law. *O'Conner* v. *Railway Co.,* 94 Mo. 150 ; 4 Am. St. Rep. 364.

3. If the injuries sustained by the deceased were the result of the wanton and wilful act of the defendant's servants, the question of contributory negligence cannot be considered. Beach on Con. Neg. 68 ; Cooley on Torts, 674 ; *Battishill* v. *Humphreys* (Mich.), 38 N. W. Rep. 581 ; 32 N. Y. 596.

We refer the court specially to the case of *Railroad Co.* v. *O'Shields* (Ala.), 8 So. Rep. 248 (90 Ala. 29). That case was very much like the one at bar.

COOPER, J., delivered the opinion of the court.

The appellee has recovered the judgment appealed from for the death of his wife, occasioned by a train of the appellant while making a "running or flying-switch" in the city of Vicksburg.

The main line of appellant's road near the place of the injury lies nearly parallel to Water street, and some twenty-five feet to the east of a dummy line, which is either upon a part of Water street or a little east of it. At a point on the main line of defendant's road, stated by the witness to be from one hundred and twenty to one hundred and sixty-five feet northeast of the place where Mrs. Summers was killed, another line of defendant's road, known as the river line, intersects the main line. This river line leaves the main line on a curve toward the southwest, crosses the dummy line and Water street, and runs to the bank of the Mississippi river.

On the day of the injury, the deceased, with a bundle of clothing on her head, was walking southward along the dummy line (where many people were accustomed to walk), and, while she was some distance north of the intersection of the river line of appellant with the dummy line, a train of the appellant going north met her and passed on, she continuing to walk south. This train passed some distance north of the intersection of the main line and the river line, and then started south to make the switch, called by various witnesses a flying, running, walking, or dropped switch. Whether it is one or the other seems to be determined by the rate of speed at which the train is running when the switch is made. The witnesses differ as to the rate of speed on this occasion, some saying the engine ran at a speed of fifteen or twenty miles an hour, while others say it did not exceed five or six miles. However this may be, what was done was this: The train, having met deceased and proceeded north, started south, and after momentum had been given to it, the two rear cars were detached. The speed of the engine and other cars was then accelerated, so that they should clear the switch at the intersection of the main and river lines before the detached cars reached that point. The engine and cars thereto attached proceeded down the main line, but the detached cars, on

reaching the intersection, were switched off on the river line, and, running thereon, struck the deceased just as she was passing across the same along the dummy line.

The engineer and fireman, seeing and appreciating the danger, attempted to warn the deceased by blowing the whistle and ringing the bell and calling to her, but the brakeman on the detached cars seems not to have seen her until too late to apply his brakes and check the speed of his cars.

At the instance of the plaintiff, the court instructed the jury that the act of the servants of the defendant, in making the running or flying-switch across Water street, was negligence *per se*, and that if the deceased was not guilty of contributory negligence, the plaintiff was entitled to recover, and refused a peremptory instruction asked by the defendant because of the contributory negligence of the deceased.

We approve the action of the court in both respects.

It is negligence for a railroad company to make a flying-switch across the streets of a town, along which people are constantly accustomed to travel. *Fulmer* v. *Railroad Co., ante,* 355 ; *French* v. *Taunton Branch R. R. Co.,* 116 Mass. 537 ; *Brown* v. *R. R. Co.,* 32 N. Y. 597 ; *R. R. Co.* v. *Garvey,* 58 Ill. 83 ; Beach on Con. Neg. 223.

Whether the deceased exercised reasonable care and prudence under the circumstances in which she acted, was also properly submitted to the jury. No trains were at the time of the injury being run on the dummy line, along which she was walking, that line being then in temporary disuse. Walking as she was towards the south, she could readily observe any train approaching from that direction. The train on appellant's main line had just met her and passed to the north, and, returning, the principal part of it, attached to the engine, had again passed along the main line going south. We cannot say, as matter of law, that it was contributory negligence on the part of the deceased not to foresee and guard against the unlawful and negligent act of the defendant in making the flying-switch by which a part of the train was shifted to another track and sped along its dangerous course behind her. The question was fairly submitted to the jury, and we are not prepared to

dissent from the conclusion it reached.    *French* v. *Taunton R. R. Co.*, 116 Mass. 537 ;  *Craig* v. *New York R. R. Co.*, 118 Ib. 431 ; *Gaynor* v. *R. R. Co.*, 100 Ib. 208 ;  *R. R. Co.* v. *McGowan*, 62 Miss. 682.                                · *The judgment is affirmed.*